M., PLAINTIFF, v. FAMILY AND CHILDREN'S SERVICE, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT.

Superior Court of New Jersey:
Chancery Division

Decided September 30, 1974.

*Mr. Charles L. Morgan* argued the cause for defendant (*Morgan & Falvo,* attorneys).

*Mr. Rocco Ravaschiere* argued the cause for plaintiff (*Parsons, Canzona, Blair & Warren,* attorneys).

YACCARINO, J. S. C. This matter came before the court on a verified complaint for an order to show cause why defendant agency should not be enjoined from interfering with plaintiff in her care of the infant child sought to be adopted. Defendant consented without prejudice to an order per-

mitting the child to remain in plaintiff's custody until the return date of the show cause order,[*] which was fixed for August 16, 1974. Prior to the return date defendant agency moved to dismiss the complaint and order to show cause, alleging that the court lacked jurisdiction. The order to show cause and the motion to dismiss for lack of jurisdiction were consolidated and argument thereon was heard by the court on August 29, 1974. On that date the court denied defendant's motion, continued the *status quo* and fixed a date for a plenary hearing for the reasons hereinafter stated.

The facts are as follows. Sometime in August 1971 plaintiff and her husband made application with defendant agency for the placement of a child in their home for the purpose of adoption. On January 7, 1974 defendant agency placed a female child in plaintiff's home and the parties executed an "Adoption Placement Agreement." One of the provisions of the agreement required plaintiff and her husband to notify the defendant agency of any "marital problems."

In May 1974 plaintiff discovered that her husband had been seeing another woman and that he was desirous of securing a divorce. Plaintiff made known this information to defendant through one of its caseworkers. On August 2, 1974 defendant advised plaintiff that the placement agreement was being terminated and that the child would be removed from plaintiff's home. Hence this action.

Our present law governing adoption was enacted in 1953 (*L.* 1953, *C.* 264) and is embraced in *N. J. S. A.* 9:3–17 *et seq.* These statutes provide for two distinct methods of adoption. They provide for separate time periods that the child must be in the home of the adoptive parents prior to instituting suit for adoption (*N. J. S. A.* 9:3–21), who is qualified to adopt (*N. J. S. A.* 9:3–22), and the manner in which the adoption shall be secured (*N. J. S. A.* 9:3–23 and 24).

*N. J. S. A.* 9:3–23, entitled "Action on Complaint," provides that unless it appears in the action

(1) that the child sought to be adopted has been received into the home of the plaintiff from or with the approval of an approved agency;

(2) that such approved agency has, by written document signed and acknowledged by its authorized officer or representative, consented to the adoption;

(3) that at least one year prior to the institution of the action the custody of the child had been surrendered to such approved agency by each parent or other person having custody of the child, and that by the terms of such surrender the approved agency had been authorized to place the child for adoption; or that an order or judgment had been entered by a court of competent jurisdiction terminating parental rights and transferring custody of the child to such approved agency or granting guardianship of the child to such approved agency; and

(4) that such child has been living continuously in the home of the plaintiff for not less than six months prior to the institution of the action; * * *;

the court must declare the child to be a ward of the court, appoint an agency to investigate, study and direct plaintiff, assist in the report and fix a date for a preliminary hearing.

*N. J. S. A.* 9:3–24, "Preliminary Hearing," governs the procedure and scope of the hearing. Subsections A and B of that section read as follows:

A. A preliminary hearing, when required by subsection A of section seven, shall be in camera, and shall have for its purpose the determination of: (1) the circumstances under which the child was received into the home of the plaintiff; (2) the status of the parents of the child with respect to further rights as to custody of the child; (3) the potential fitness of the child for adoption; and (4) the potential fitness of the plaintiff to adopt the child and to provide a home suitable for his rearing.

B. If in the course of the preliminary hearing the court shall determine that there is lack of jurisdiction, or that there is lack of qualification on the part of a plaintiff, or that the child is in the custody of an approved agency and *such agency has not consented to the adoption, the action shall be dismissed forthwith.* [Emphasis supplied]

■ Defendant argues that since the ultimate approval of the adoption rests with its consent, notwithstanding that plaintiff may in all other respects qualify, this court is without jurisdiction to review defendant's decision to terminate

the placement agreement. The question presented appears to be one of first impression. This court rejects defendant's contention and holds that it has inherent jurisdiction to set aside a decision by the agency to withhold its consent if it should appear that such discretion was exercised in an arbitrary, capricious or unreasonable manner, or where the withholding of consent is not in the best interest of the child. Support for this conclusion can be found in several sources. The most persuasive reasons are the legislative and judicial mandates that matters of adoption be decided in the best interest of the child. *N. J. S. A.* 9:3–27 provides in paragraph C as follows:

If, from the report and the evidence presented, the court shall be satisfied that *the best interests of the child would be promoted by the adoption,* the court shall enter a judgment of adoption. [Emphasis supplied]

This policy was stated by the court in *In re P and Wife,* 114 *N. J. Super.* 584 *(App. Div.* 1971), wherein the court said:

Since the policy which absolutely controls an adoption proceeding is what is in the best interests of the child, a judge should lend every effort to make certain he has all pertinent evidence relating to the parties involved * * *. [at 590]

See also *N. J. S. A.* 9:23–27(c); *In re Adoption of D,* 61 *N. J.* 89 (1972); *In re L's Adoption,* 56 *N. J. Super.* 46 *(Cty. Ct.* 1959).

Authority for the court's position may also be found in 2 *C. J. S.* Adoption of Persons § 55 at 473, wherein it states:

Despite the statutory authorization granted to public agencies, boards or officials to give or withhold consent, the courts are usually vested with discretion to allow an adoption without the consent of the agency where the court deems that the welfare of the child will be promoted by the adoption, or where the objection or refusal to consent to adoption by the particular board, agency or official is arbitrary or unreasonable. Similarly, the court in adoption proceedings may have power to dispense with the consent ordinarily required of

a private custodial or placement agency having control of the child, where it deems such action warranted by the best interests of the child.

Further authority for the court's position may be found in 2 *Am. Jur. 2d* § 39 at 891, wherein it is stated:

While it has been held that a court does not have jurisdiction to grant a decree of adoption without the consent of the institution to whose guardianship the child was committed, a petition for adoption may be granted notwithstanding refusal of consent by the state board having control of the child where such consent is unreasonably withheld. In other words, when an approved agency, as the custodial guardian, refuses to file its written consent in an adoption proceeding, the court, after a hearing on the reasonableness of its action, may, in the proper exercise of judicial discretion, enter an order dispensing with the necessity of consent.

In the case of *In re Haun,* 31 *Ohio App. 2d* 63, 286 *N. E. 2d* 478 (1972), the court was called upon to review the issue of agency consent in an adoption case. Ohio's adoption act, like that of New Jersey, provided that, absent agency consent:

. . . no final decree or interlocutory order of adoption shall be entered by the Probate Court.

In that case the foster parents sought to adopt one of the many children that they had taken into their home. Contending that the prospective parents (husband age 68 and wife age 55) were too old, the agency withheld its consent. The agency argued that its consent was a jurisdictional prerequisite and that absent such consent the court had no jurisdiction in the matter. The court rejected the agency's contention and held:

Pursuing that obligation we conclude that the requirement of agency consent was not intended by the legislature to give an unnatural parent an arbitrary, unreasonable or capricious power to defeat judicial review and, coincidentally, impeded, in a specific case as in this instance, the objectives of securing qualified adoptive parents and promoting the best interests of a child available for

adoption. Moreover, we find that refusal of consent even when it is not arbitrary, unreasonable or capricious does not deprive the Probate Division, Common Pleas Court, of jurisdiction. To the degree that it is reasonable, it does add an element for consideration in the probate court's determination of the qualifications of the adoptive parents and the best interests of the child.

In the case of *In re McKenzie,* 197 Minn. 234, 266 *N. W.* 746, 104 *A. L. R.* 1460 (Sup. Ct. 1936), the court held that the withholding of agency approval from persons otherwise qualified, because of difference of religion between plaintiffs and the child, was an abuse of discretion. The court said:

[T]he board, though no doubt endeavoring to act in utmost good faith, is nevertheless doing so in such complete contradiction to the welfare of the child as to make its denial arbitrary and capricious in the eyes of the law as applied in this instance. It may not withhold its consent in that manner, and the trial court is wholly justified in proceeding as if the consent which ought to have been given had been given.

Having disposed of the jurisdictional issue, the court now directs its attention to the question of the agency's decision to terminate the placement agreement.

The placement agreement executed by these parties provides in part that the adoptive parents have a right to return the child and the agency may remove the child "if it seems in his best interest anytime before the Court Hearing."

██ The *New Jersey Administrative Code, subchapter 6,* § 10:104–6.2, dealing with post-placement supervision, provides in paragraph (e) that:

The removal of the child shall be the decision of the agency and/or the family. The child may be removed only if his security and well being are impaired or his needs are no longer served by adoption placement.

Both the express agreement between the parties and the language of the Code governing the agency adopt "the best interest of the child" as the standard to be employed in determining to remove the child. The court therefore concludes

that the agency's decision to remove the child is subject to the same judicial review as is the agency's decision to withhold consent to an adoption. The overriding consideration in reviewing the propriety of that decision is the child's welfare. This criterion must be employed, for it may appear that while the agency acted reasonably, such act may not serve the best interest of the child. See *In re Haun, supra.*

Based on the foregoing, it is the judgment of this court that plaintiff herein is entitled to a plenary hearing, and the guidelines for the hearing shall be in accordance with the court's opinion.